IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


TODD C. SCHWANZ

                Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

No. 10-CV-795-HZ

OPINION AND ORDER


David B. Lowry
9900 S.W. Greenburg Road
Columbia Business Center, Suite 130
Portland, OR 97223

      Attorney for Plaintiff

Dwight Holton
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY

1 - OPINION AND ORDER

1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Lisa Goldoftas
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Todd Schwanz challenges the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. I have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons set forth below, I AFFIRM the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Schwanz filed applications for DIB and SSI on September 10, 2004, alleging he became unable to work on August 15, 1998, due to depression, ADD, vertigo, bipolar disorder, and anxiety. Admin. R. 70-72, 100, 704-08.[1] He satisfied the insured status requirements of the Social Security Act through March 31, 2005. Id. at 86. To prevail on his claim under Title II, a DIB claimant must establish that his disability began on or before the date last insured. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

      After denial of his applications, Schwanz requested reconsideration which also was denied. Admin. R. 54-57. Schwanz then timely requested a hearing. Id. at 53. A hearing was

---

[1] Citations are to the pages indicated in the official transcript of the administrative record filed on December 1, 2010 (docket #10).

held on October 30, 2007 before Administrative Law Judge ("ALJ") Catherine Lazuran. Id. at

709-782. On May 30, 2008, the ALJ issued her decision finding Schwanz not disabled. Id. at

13-29. The Appeals Council denied Schwanz's request for review of the ALJ's decision. Id. at

6-8. The Appeals Council decision is a final decision of the Commissioner, subject to review by

this court. 20 C.F.R. § 410.670a.

## FACTUAL BACKGROUND

The parties are familiar with the medical and other evidence of the record. I will not,

therefore, repeat the evidence except as necessary to explain my decision.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five

steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920;

Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step

two, the ALJ determines if the claimant has "a severe medically determinable physical or mental

impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509,

404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe

impairment, he is not disabled. Id.

At step three, the ALJ determines whether the severe impairment meets or equals an

impairment "listed" in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If

the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. Yuckert, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f). If the claimant cannot perform such work, he is disabled. Id.

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 405.1520(g), 416.920(g).

A claimant cannot be disabled within the meaning of the Social Security Act if drug addiction or alcoholism is a contributing factor material to the determination of disability. 42

U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).  Accordingly, if a claimant is found disabled, and there is medical evidence of a substance abuse disorder, the ALJ must perform the sequential decision-making process a second time, conducting a drug abuse and alcoholism analysis ("DAA"), and determine whether drug addiction or alcoholism "is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535, 416.935.  The key factor is whether the ALJ would still find the claimant disabled if he stopped using alcohol.  Id.; Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001). In such materiality determinations, the claimant bears the burden of proving that drug addiction or alcoholism is not a contributing factor material to the disability determination.  20 C.F.R. §§ 404.1535, 416.935.

## THE ALJ'S DECISION

At step one, the ALJ determined Schwanz had not engaged in substantial gainful activity since his alleged disability onset date.  Admin. R. 19.  At step two, the ALJ found Schwanz had severe impairments of depression disorder, anxiety-related disorder, and alcoholism.  Id.  At step three, the ALJ determined Schwanz's impairments met the substance abuse disorder listing 12.09 of 20 C.F.R. Part 404, Subpt. P. App. 1, §12.09, thus finding Schwanz disabled.  Id. at 19-20.

The ALJ was then required to perform a DAA analysis, and made additional findings which factored out the effects of substance abuse.  At step two, the ALJ found Schwanz would continue to have severe impairments of depression and anxiety, and at step three, Schwanz would not have an impairment or combination thereof that meets the listings.  Id. at 20-21.

The ALJ next found Schwanz retained the RFC to perform a full range of work at all exertional levels, but with the nonexertional limitations of performing only simple, repetitive

tasks involving minimal social interaction. Id. at 22-27. She determined at step four, Schwanz would probably be able to perform past relevant work as an assembler. Id. at 27.

The ALJ made an alternative step five finding. She found that if Schwanz stopped the substance abuse, considering his age, education, work experience, and the limitations in his RFC assessment, there would be a significant number of jobs in the national economy that he could perform. Id. Based on the testimony of the vocational expert ("VE"), the ALJ determined Schwanz was able to work as an assembler or motel cleaner. Id. at 27-28. The ALJ found that Schwanz's substance abuse was a contributing factor material to the determination of disability, and therefore concluded that Schwanz was not disabled within the meaning of the Social Security Act. Id. at 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also

Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations of the evidence

are insignificant if the Commissioner's interpretation is a rational reading.  Id.; see also Batson, 359

F.3d at 1193.

## DISCUSSION

### I.    Claims of Error

Schwanz asserts four claims of error.  First, he contends the ALJ erred in evaluating lay

witness evidence and did not properly assess his RFC.  Next, Schwanz argues the ALJ erred in her

step four findings that Schwanz could probably perform past relevant work, and at step five,

improperly relied on testimony from the VE regarding the numbers of jobs available at the local and

national levels.  Lastly, he claims the ALJ failed to properly apply the regulations pertaining to

substance abuse, and thus, erred in finding substance abuse was a contributing factor material to his

disability.

### II.   RFC Assessment

The RFC assessment describes the work-related activities a claimant can still do on a

sustained, regular and continuing basis, despite the functional limitations imposed by his

impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

The RFC assessment must be based on all the evidence in the case record, and the ALJ must consider

all allegations of limitations and restrictions.  SSR 96-8p, 1996 WL 374184 *5 (July 2, 1996).  The

ALJ found that if he stopped the substance abuse, Schwanz would have the RFC "to perform a full

range of work at all exertional levels but with the following nonexertional limitations: [he] would

be limited to simple, repetitive tasks involving minimal interaction socially."  Admin. R. 22.

The ALJ's RFC findings were based on substantial evidence in the record, and properly accommodated Schwanz's credible limitations. The ALJ did not challenge the existence of medical impairments that could produce some of the symptoms Schwanz alleged, but determined Schwanz's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. Id. at 23-7. The ALJ found that Schwanz impeded the accurate evaluation of his functional capacity by providing inconsistent statements to various sources in the record regarding his work history, substance abuse history, and symptoms. Id. at 22-27. Schwanz does not challenge the ALJ's adverse credibility finding as to his subjective symptom testimony. He instead contends the ALJ improperly rejected his lay witnesses' statements regarding the severity of his impairments, and therefore, improperly assessed his RFC as to his nonexertional limitations.

### A.    Lay Witness Testimony – Mr. Schwanz

Schwanz contests the ALJ's discrediting of his father's and his friend's lay witness statements. An ALJ must consider lay witness testimony concerning a claimant's ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). Lay testimony as to the claimant's symptoms or how an impairment affects the ability to work cannot be disregarded without comment. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). If the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685 (9th Cir. 2009), Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.2005); Batson, 359 F.3d at 1193.

In September 2004, Schwanz's father, Arnold (hereinafter "Mr. Schwanz"), provided a written third party function report regarding his activities and abilities. <u>Id.</u> at 89-97. Mr. Schwanz reported that Schwanz did computer work, prepared his own meals, took care of his cat, had no problem with personal care, and did his own laundry, cleaning, ironing, and household repairs. <u>Id.</u> at 89-91. He said Schwanz was able to get around and go shopping on his own. <u>Id.</u> at 92. Mr. Schwanz reported his son could pay bills, handle a savings account, count change, and use a checkbook, and that Schwanz's ability to handle money had not changed since his conditions began. <u>Id.</u> at 92-3. Mr. Schwanz also stated that his son engaged in hobbies and interests such as computers, photography, fishing, hunting and sailing. <u>Id.</u> at 93. He said Schwanz spent time with others, but was "argumentative at times, frequently intoxicated, and secretive." <u>Id.</u>

In October 2007, Mr. Schwanz completed a "witness statement" form, which adapted the Social Security Administration's ("SSA") "B and C criteria" for mental disorders, and asked the witness to rate the claimant's functionality on a "mild, moderate, marked, and extreme" numerical scale. 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00 (A); Admin. R. 393-400. This form required the lay witness to rate the impairment-related functional limitations that are incompatible with the ability to do any gainful activity, and employ the evaluative measures utilized by medical experts. 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00 (A). Mr. Schwanz was asked to provide ratings for Schwanz's mental and emotional functioning for the period July 2004 through March 2005. Admin. R. 393-400.

Schwanz first argues that the ALJ did not incorporate limitations identified in Mr. Schwanz's September 2004 statement, and rejected it without any findings. Pl.'s Opening Br. at 19. However, the ALJ did not wholly reject Mr. Schwanz's statement. Instead, the ALJ found Mr. Schwanz's

September 2004 comments generally consistent with her RFC assessment that Schwanz would be limited to simple, repetitive tasks involving minimal social interaction.  Admin. R. 22.  In his September 2004 statement, Mr. Schwanz indicated his son was able to complete his activities of daily living ("ADLs") and engage in hobbies.  Mr. Schwanz's statements about Schwanz's struggles with his memory, getting along with others, and completing tasks are not inconsistent with the ALJ's RFC assessment.  Id. at 89-97.  In fact, Mr. Schwanz's statements support these nonexertional limitations.

The ALJ gave less weight to Mr. Schwanz's subsequent October 2007 "Witness Statement," explaining (1) it was inconsistent with his September 2004 statement; (2) the period covered less than twelve months; and (3) the form was designed for use by medical sources who are familiar with the Social Security terms and issues.  Id. at 26.

The ALJ's first reason, that Mr. Schwanz's second statement was inconsistent with his first, is supported by substantial evidence in the record.  In September 2004, Mr. Schwanz responded to five pages of questions about his son's ADLs, and he did not report that his son had any problems. Id. at 89-93.  In contrast,  in his October 2007 statement which partially covered the same time period, Mr. Schwanz stated that his son had "marked" limitations with his ADLs.  Id. at 393.  The ALJ provided a germane reason for rejecting Mr. Schwanz's second statement, and did not improperly discount his testimony.

Next, the ALJ discredited Mr. Schwanz's October 2007 statement because it involved an eight-month period, July 2004 through March 2005.  Id. at 26, 393.  In the disability analysis, a twelve-month period comprises the duration requirement.  Unless an impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least twelve

10 - OPINION AND ORDER

months. 20 C.F.R. §§ 404.1509 and 416.909.  The twelve-month time period is germane, and therefore, the ALJ did not err in providing this timeframe as rationale for giving Mr. Schwanz's statement little weight.

Lastly, the ALJ indicated that Mr. Schwanz lacked the expertise to complete a form which presumed familiarity with the Social Security's technical terms and issues pertaining to disability. Mr. Schwanz purported to assess the severity of his son's mental impairments by rating him as having "marked" limitations in activities of daily living; "marked" limitations in social functioning, "extreme" limitations in concentration, pace, and persistence; and, "marked" episodes of decompensation.  Admin. R. 393-96.  In discrediting this assessment, the ALJ correctly concluded that Mr. Schwanz was not an acceptable medical source familiar with the SSA's disability terms and issues, and that he lacked the expertise to provide a functional assessment based on the referenced medical factors.  Id. at 26; 20 C.F.R. §§ 404.1513(a), 416.913(a); Nguyen, 100 F.3d at 1467 (discussing Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (lay witness statement that claimant suffered mental impairments as a result of a stroke amounted to a diagnosis, which is beyond the competence of a lay witness)).  Although Schwanz contends that Mr. Schwanz provided detailed explanations in a narrative format, a review of the "Witness Statement" indicates the sections in question merely explain conclusions that remain beyond the competence of this lay witness.  Pl.'s Opening Br. at 21, Admin. R. 393-400.

The Ninth Circuit previously addressed this specific issue, and affirmed the ALJ's rejection of similar lay witness testimony.  Conley v. Comm'r of the Soc. Sec. Admin., 321 Fed.Appx. 575, 578 (9th Cir. 2009)[2].  In Conley, the lay witness completed a similar form, and the ALJ gave no

_____

[2] Fed. R. App. P. 32.1 (A court may not prohibit or restrict the citation of federal judicial
(continued...)

weight to the statement that the claimant's "daily living activities were 'markedly' limited, that her social functioning was 'moderately' limited, that her concentration persistence and pace were 'markedly' limited, and that she has 'marked' episodes of decompensation." Id. The ALJ in Conley reasoned that the lay witness was not a medical professional and thus, "was not qualified to make assessments of whether the claimant was 'markedly,' 'moderately,' or otherwise limited." Id. The Court found that the ALJ provided a germane reason for discounting the testimony and did not err. Id. Likewise here, the ALJ gave a germane reason for giving little weight to Mr. Schwanz's October 2007 "Witness Statement," and her finding is sustained. Admin. R. 26, 393-400.

### B.    Lay Witness Testimony – Mr. Soreide

Mr. Soreide also completed the same "Witness Statement" form as Mr. Schwanz. Both individuals completed their forms in October 2007, for the time period from July 2004 through March 2005. Id. at 400-408. In her findings, the ALJ stated that she gave Mr. Soreide's opinion "little weight" for "the same reasons" she provided for discounting Mr. Schwanz's opinion. Id. at 26. Schwanz argues that because Mr. Soreide did not provide an earlier statement subsequently inconsistent with his October 2007 witness statement, this was not a germane reason, specific to Mr. Soreide for discrediting his statement. Schwanz is correct; the ALJ failed to distinguish between the statements of Mr. Schwanz and Mr. Soreide. That failure constitutes legal error.

A decision to deny benefits will only be disturbed if it is not supported by "substantial evidence or it is based on legal error." Burch, 400 F.3d at 679, citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). A decision of the ALJ will not be reversed for errors that are harmless.

---

[2](...continued)

opinions, orders, judgments, or other written dispositions that have been; (i) designated as "unpublished," "not for publication," "nonprecedential," "not precedent," or the like; and (ii) issued on or after January 1, 2007).

Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).  For an error to be held

harmless, the ALJ's error must be inconsequential to the ultimate non-disability determination.

Stout, 454 F.3d at 1055-56.  The record reveals the ALJ's error is harmless because Mr. Soreide and

Mr. Schwanz completed identical forms, and she provided two germane reasons for discrediting lay

witness use of such medical forms.  In this case, the ALJ's reasoning applied to both Mr. Soreide and

Mr. Schwanz, and under the circumstances, her finding was appropriate.

The two similar reasons the ALJ provided for assigning Mr. Soreide's opinion "little weight"

include the eight-month time period for his assessment, and his lack of expertise needed to complete

a form designed for use by medical sources, who are familiar with the terms and issues of evaluating

disability in the Social Security context.  Admin. R. 26.  As previously discussed, the twelve-month

time period is relevant to the analysis, and constitutes a germane and specific reason for discounting

Mr. Soreide's statement.

Furthermore, Mr. Soreide purported to assess the severity of Schwanz's mental impairments

by rating him as having "marked" limitations in activities of daily living; "moderate" limitations in

social functioning; "marked" limitations in concentration, pace, and persistence; and, "moderate"

episodes of decompensation.  Id. at 401-4. In discounting this assessment, the ALJ correctly

concluded that Mr. Soreide was not an acceptable medical source familiar with the SSA's disability

terms and issues, and that he lacked the expertise to provide a functional assessment based on the

referenced medical factors.  Again, the ALJ provided a germane and specific reason for discrediting

Mr. Soreide's opinion, and thus, did not err in giving his statement "little weight."  Id. at 26.

Although the ALJ erred by broadly stating she gave Mr. Soreide's "opinion little weight for

the same reasons" as Mr. Schwanz, this error was harmless. Given that Mr. Schwanz and Mr.

Soreide completed the same "witness statement" form, covering the same time period, and that the ALJ had identical concerns about each lay witness' use of such a form, it is entirely reasonable that the ALJ's rationale applied to both Mr. Schwanz and Mr. Soreide. Because the ALJ's findings are based on inferences reasonably drawn from the record, the court may not substitute a different view of the evidence even if it is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039. Therefore, the ALJ articulated germane reasons specific to Mr. Soreide and properly discredited his October 2007 lay witness testimony.

In conclusion, the ALJ considered the lay witness' statements about Schwanz's ability to work. She did not disregard the statements without comment. The ALJ gave germane reasons for giving their opinions little weight as to the severity of Schwanz's mental impairments, and her lay witness credibility findings are upheld.

## III.    **Step Four Finding**

At step four, the ALJ found Schwanz would "probably" be able to perform past relevant work as an assembler. Id. at 27. Schwanz asserts this finding is contrary to law; the ALJ is required to determine if Schwanz can perform his past work. 20 C.F.R. §§ 404.1560(b) and 416.960(b). Schwanz correctly points out that the ALJ's "probably" finding was not a clear determination of whether Schwanz could perform past relevant work. However, the record shows that although the ALJ's finding was equivocal, it constitutes harmless error. The court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

14 - OPINION AND ORDER

Here, the ALJ proceeded "in the alternative" to step five, presuming that Schwanz could not perform his past relevant work, and completed a thorough disability analysis. Admin. R. 27-8. Based on VE testimony, the ALJ found that there were significant numbers of jobs in the national economy which Schwanz could perform given his age, education, work experience, and RFC. Id. at 27. Since the ALJ completed the five-step analysis, her step four finding was inconsequential to her determination of not disabled, and therefore was harmless error.

## IV.    Vocational Evidence

Schwanz contends the ALJ failed to satisfy the Commissioner's burden at step five of the decision-making process. At step five, the Commissioner must show there are jobs in the national economy that the claimant can do. Tackett, 180 F.3d at 1099. The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Id.; Andrews, 53 F.3d at 1043. Schwanz objects that the VE did not explain the foundation for her estimates of job numbers she attributed to the hypothetical limitations posed by the ALJ. In disability cases, a VE's recognized expertise provides the necessary foundation for her testimony and no additional foundation is required. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ elicited testimony from the VE based on the ALJ's RFC assessment. Admin. R. 773-82. The ALJ may properly rely on the VE's testimony elicited with a hypothetical question containing all of the limitations that the ALJ found credible and supported by substantial evidence in the record. Bayliss, 427 F.3d at 1217. An ALJ is not required to incorporate limitations based on evidence that he properly discounted. Batson, 359 F.3d at 1197-98; Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The VE testified that a person with the RFC described by the ALJ

could perform the work activities required in occupations such as an assembler (600,000 jobs nationally and 6,000 jobs locally), and a motel cleaner (1,000,000 jobs nationally and 11,000 jobs locally).  Admin. R. 28, 777-8.

At the beginning of the hearing and at the beginning of the VE's testimony, Schwanz objected to the VE's testimony, contending she was not qualified to testify about the numbers of jobs.  Id. at 711-712, 773.  The ALJ overruled his objections, explaining Schwanz could submit contrary evidence and cross examine the VE.  Id. at 711-712.  The ALJ stated she would consider Schwanz's comments and evidence.  Id. at 712.

At the end of his cross-examination of the VE, Schwanz's attorney asked the VE for her basis of the estimate of jobs provided.  Id. at 781.  The VE stated that the numbers of jobs applied to the Standard Occupational Classification (SOC) code, which "[a]lmost always" includes several Dictionary of Occupational Titles (DOT) codes.  Id.  The VE further testified that the numbers of jobs in those job classifications were not "over-estimates."  Id. at 782.

Schwanz now contends that the ALJ could not rely on the VE's opinion regarding the number of jobs available because it allegedly lacks foundation.  However, this argument has little merit.  An ALJ may rely on testimony by a VE without additional foundation, because the "VE's recognized expertise provides the necessary foundation for his or her testimony."  Bayliss, 427 F.3d at 1218. The ALJ properly relies on the VE's testimony for the number of jobs available in the local and national economies.  Crane v. Barnhart, 224 Fed.Appx. 574, 578 (9th Cir. 2007). The VE stated that the numbers of jobs provided were "fair estimates," and explained that she relied and based her estimates upon "those extrapolations from the data available to experts in the field and practitioners."

Id. at 781-2.  The ALJ applied the proper legal standard, and did not err by relying on the VE's testimony.

Schwanz also asserts the ALJ should have considered documentation he submitted regarding numbers of available jobs.  The ALJ, however, is not required to discuss all evidence presented to him, although he must "explain why significant probative evidence has been rejected."  Vincent, 739 F.2d at 1394-95.[3]  The evidence Schwanz submitted from the U.S. Department of Labor ("USDOL") and Oregon Employment Department was neither significant nor probative.  It did not provide information regarding how many jobs were available in the local and national economies. Furthermore, Schwanz's assertion has been rejected in several unpublished Ninth Circuit and district court cases.  In Jaynes v. Astrue the court stated:

> Plaintiff contends the ALJ erred when he failed to address evidence that Plaintiff submitted from the USDOL and the Oregon Employment Division in which those agencies indicated they do not track numbers of jobs available by DOT code. The Ninth Circuit, however, has rejected similar arguments and concluded an ALJ may rely solely on the VE's testimony as to the number of jobs available in the national economy and does not have to address additional vocational materials submitted by a claimant. See, e.g., Howard v.. Astrue, 330 F. App'x [sic] 128 (9th Cir.2009)(Letters "from the U.S. Department of Labor's Bureau of Labor Statistics, the U.S. Census Bureau, and the Oregon Employment Department establishing that none of these agencies gathers the precise information with respect to the availability of jobs to which the VE testified and on which the ALJ and magistrate judge relied ... submitted by [Plaintiff] did not provide 'significant probative evidence' regarding how many jobs were available in the local and national economies. The ALJ properly

---

[3] The Commissioner correctly counters that Schwanz erroneously relies on Aleksashin v. Apfel and Flores v. Shalala, two Ninth Circuit cases that are inapposite, and do not relate to the VE's testimony about the numbers of jobs at the national and local level.  Def.'s Br. at 17.  These cases instead hold that *vocational rehabilitation reports* constitute "significant probative evidence" and the ALJ may not reject such evidence without explanation.  Aleksashin, 1999 WL 562691, *8-9 (D.Or. 1999); Flores, 49 F.3d 562, 564, 570-71 (9th Cir. 1995).

17 - OPINION AND ORDER

> relied on the VE's testimony for that information."); Crane v.
> Barnhart, 224 F. App'x 574, 578 (9th Cir.2007)(same).

No. 10–CV–568–BR, 2011 WL 1630808, *6 (D.Or. Apr. 29, 2011); see also Nelson v. Astrue,

No.10-18-MO, 2011 WL 39826, *7 (D.Or. Jan. 5, 2011).

In summary, the ALJ neither erred by relying upon the VE about the numbers of jobs

available at the local and national economies, nor when she did not address Schwanz's evidence

from the USDOL and the Oregon Employment Department.

**V.    Substance Abuse Analysis**

Schwanz next argues that the ALJ failed to properly apply the regulations pertaining to

substance abuse, and to show that substance abuse is a material factor in his disability.

Schwanz was born in 1967, and alleged disability at the age of thirty-one. Id. at 70, 101.

Schwanz completed high school and studied electronics engineering at the college level for

approximately three years. Id. at 180, 714. He has worked with computers for twenty-five years.

Id. at 180. Most recently, he was self-employed as a computer consultant, from 2002 until he

sustained a head injury in July 2004. Id. at 715.

He has a long history of abusing alcohol and marijuana. Id. at 412, 423-4, 452-3, 458, 518,

555, 567-8, 612-3, 681. Schwanz stated that he began using marijuana at approximately twelve years

of age and drinking at sixteen. Id. at 423-24, 452. At one point, he drank twelve to eighteen beers

per day. Id. at 452, 735. Since his substance abuse disorder began, Schwanz has had a limited

period of sobriety, the length of which is difficult to determine due to Schwanz's conflicting

statements. Id. at 519, 621, 675. He has been non-compliant with stopping the use of alcohol, and

had four DUIs, in the 1980s and 1990s. Id. at 734-5. Schwanz testified he still continues to use

alcohol, admitting to currently drinking two beers every other day, and two or three beers daily. Id. at 733-34, 739.

Under 42 U.S.C. § 423(d)(2)(C), an individual cannot receive disability payments from the SSA if alcohol or drug abuse would be a contributing factor material to the Commissioner's determination that the individual is disabled. Under the regulations, when an ALJ finds a claimant disabled and there is evidence of substance abuse, the ALJ conducts a DAA and determines which of the claimant's disabling limitations would remain if the claimant stopped using drugs and alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b). If the remaining limitations would not be disabling, then the claimant's substance abuse is material and disability payments must be denied. Id.; see Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007). The claimant bears the burden of proving his substance abuse is not a contributing factor material to the disability determination. Parra, 481 F.3d at 744-5, 748. To carry this burden, the claimant must offer evidence that the disabling effects of the impairment(s) would have remained had the claimant stopped abusing drugs or alcohol. Id. at 748-49.

A.    **Schwanz's reliance on the SSA "Emergency Teletype"**

Schwanz contends the ALJ failed to properly apply the regulations pertaining to substance abuse, relying on an "Emergency Teletype" issued by the SSA on August 30, 1996 about substance abuse. Pl.'s Opening Br. at 16. The SSA teletype explains that "a finding that DAA is material will be made only when the evidence establishes that the individual would not be disabled if he/she stopped using drugs/alcohol." http://www.nosscr.org/ssas/daa-q&a.htm, at question twenty-seven. In "cases in which the evidence demonstrates multiple impairments, especially cases involving multiple mental impairments, where the [medical or psychological

consultant] cannot project what limitations would remain if the individuals stopped using drugs/alcohol," the medical or psychological consultant "should record his/her findings to that effect," and the disability examiner "will find that DAA is not a contributing material factor to the determination of disability." Id.  "When it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate."  Id. at question twenty-nine.

Schwanz points to the exchange between the ALJ and medical expert ("ME"), Dr. McDevitt, at his October 2007 hearing, as evidence that the ALJ failed to apply the SSA teletype guidelines.  The ALJ asked Dr. McDevitt, a board-certified psychiatrist, his opinion about whether alcoholism was a material factor contributing to Schwanz's disability.  Admin. R. 774. Dr. McDevitt responded that he could not tell whether Schwanz's affective disorder was secondary to the alcohol, but testified that Schwanz's alcohol use was a "serious material issue." Id.  Dr. McDevitt further stated that Schwanz had dual diagnoses, and it was "not cut and dry" whether the affective disorder existed before Schwanz began the substance abuse, or if the disorder developed as a result of his drinking.  Id. at 775.  Therefore, because Dr. McDevitt did not separate the mental impairments and limitations imposed by DAA, Schwanz asserts the ALJ erred by finding that alcoholism was a material factor contributing to his disability.

Although the Commissioner did not respond, this argument cannot be sustained according to Ninth Circuit case law.  In Parra v. Astrue, the ALJ's finding was upheld where the ME's testimony was similarly inconclusive about whether the claimant's disabling limitation would remain if the claimant stopped using alcohol.  481 F.3d at 742.  Like Schwanz, the claimant in Parra argued that the SSA's August 1996 Emergency Teletype precluded a finding of materiality

unless the medical evidence affirmatively shows that a disability will resolve with abstinence. Id.

at 749. The Court stated:

> We reject this argument, which effectively shifts the burden to the Commissioner to prove materiality. Assuming without deciding that the…Teletype provisions apply to this situation, we have previously explained that internal agency documents such as these do not carry the force of law and are not binding upon the agency. *See, e.g., Lowry v. Barnhart,* 329 F.3d 1019, 1023 (9th Cir.2003); *Moore v. Apfel,* 216 F.3d 864, 868-69 (9th Cir.2000). Therefore, they do not create judicially enforceable duties, and we will not review allegations of noncompliance with their provisions. *See Moore,* 216 F.3d at 869.
>
> At most, these sources may represent the agency's unpromulgated interpretation of the statute's phrase "contributing factor material to the determination of disability." Such an interpretation is " 'entitled to respect' " but only to the extent that it has the " 'power to persuade.' " *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). In this case, such an interpretation is unpersuasive because it contradicts the purpose of the statute…Congress sought..."to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball,* 254 F.3d at 824. [footnote omitted]  Appellant's proposed rule provides the opposite incentive. An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated. His claim would be guaranteed only as long as his substance abuse continues–a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose.

Id. at 749-750. Thus, Schwanz's reliance on the SSA's teletype is improper. Schwanz bore the

burden of proving his substance abuse is not a contributing factor material to the disability

determination. Id. at 744-5, 748. Evidence that is inconclusive does not satisfy this burden. Id.

21 - OPINION AND ORDER

at 749-750.  The ALJ did not err by concluding Schwanz's alcoholism was a contributing factor material to his disability, and her finding is upheld.

  **B.**  **Materiality of Substance Abuse**

  To the extent Schwanz challenges the ALJ's materiality finding because she failed to properly address the ME's testimony regarding Schwanz's limitations without alcohol, the record shows that the ALJ gave Dr. McDevitt's testimony proper weight, and relied on his opinion throughout most of her DAA findings.  Admin. R. 19-21, 25-7.  Further, substantial evidence in the record supports the ALJ's conclusion, as evidenced below.

  Dr. McDevitt testified the record was "very clear" that Schwanz had a dual diagnosis; in addition to his alcohol abuse, Schwanz had an affective and a social anxiety disorder.  Id. at 763, 765, 768.  He testified that Schwanz's symptoms of attention deficit hyperactivity disorder were instead, attributed to his affective disorder.  Id. at 769.  Dr. McDevitt disagreed with the bipolar disorder diagnosed by Carol Burckhardt, PMHNP, explaining that there was no evidence of manic attacks, other than Schwanz's subjective claims.  Id. at 767.

  Dr. McDevitt also challenged Schwanz's diagnosis of positional vertigo, which he explained, "probably is another sequelae from [Schwanz's] chronic alcoholism" and is usually treated by otologists, rather than neurologists.  Id. at 766.  Other than Dr. Erde, who is neither an otologist nor neurologist, there is no additional foundation for this medical diagnosis in the objective medical record.  Id.

  Dr. McDevitt then testified that there is no clinical evidence of the traumatic head injury to which Schwanz continually refers.  Id. at 763-5.  According to the medical record, in July 2004, Schwanz was assaulted and hit in the head with a skateboard.  Id. at 580-83, 586, 588.  The

progress notes stated there "was an odor of alcohol about him and he was found wearing a bullet proof vest." Id. at 580.  Dr. McDevitt explained that Schwanz's Glasgow Coma Scale was fourteen, and it would need to be thirteen or less to meet the criteria for traumatic brain injury. Id. at 582, 763-64.  Dr. McDevitt opined that the physician likely had a difficult time evaluating Schwanz on the night of the assault because Schwanz was heavily intoxicated; his blood alcohol level was measured at .305.  Id. at 27, 589, 763-64.  Dr. McDevitt further noted that Dr. Mecouch, D.O. and board-certified psychiatrist, examined Schwanz six months after the incident. Id. at 621-623, 768.  Dr. Mecouch diagnosed a depressive disorder and alcohol dependence, and a "status post closed head injury," "without evidence of current memory difficulties."  Id. at 623, 768.  The ALJ's DAA analysis finding that Schwanz would continue to have the severe impairments of depression and anxiety is consistent with Dr. McDevitt's testimony.

As a part of the step three analysis, the ALJ asked Dr. McDevitt to rate Schwanz's "B criteria," a set of impairment-related functional limitations for substance abuse disorder listing 12.09.  Id. at 770; 20 C.F.R. Part 404, Subpt. P, App. 1.  For impairments to meet a listing at step three, the "A criteria" and either the "B" or "C" criteria must be satisfied.  20 C.F.R. Part 404, Subpt. P, App. 1.  To satisfy the "B criteria," the impairments must result in at least two of the following: marked restriction of ADLs; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  Id.  A "marked" limitation is more than moderate, but less than extreme.  Id.

Dr. McDevitt testified that with the alcohol abuse, Schwanz had a marked limitation of ADLs, marked social functioning, and marked concentration, persistence, or pace. Admin. R.

770.  He stated that Schwanz had one to two episodes of decompensation, both associated with heavy drinking.  Id.  In contrast, without the effects of alcohol abuse, Dr. McDevitt testified that Schwanz was moderately impaired in his ADLs, social functioning, and concentration, persistence, or pace, and would have no episodes of decompensation.  Id.

The ALJ agreed with Dr. McDevitt's assessment that Schwanz had moderate restriction of ADLs and difficulties in maintaining social functioning, but she disagreed with the moderate rating in maintaining concentration, persistence, or pace.  Id. at 26.  Instead, the ALJ found Schwanz had mild limitations in this area, relying on two examining psychiatrists' reports:  Dr. Boverman stated that Schwanz's "thought process was coherent and his judgment and insight appeared to be intact," and Dr. Vinocur wrote that Schwanz's "[t]hought processes were circumstantial and tangential at times," but his "[c]ognitive function was grossly intact."  Id. at 21, 413, 424.  The ALJ generally must accord greater weight to the opinion of an examining physician over that of a non-examining, reviewing physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ's reliance on the examining psychiatrists' opinions over Dr. McDevitt, a non-examining psychiatrist, did not constitute legal error.

The ALJ further stated the record supports the conclusion that Schwanz has mild limitations in maintaining concentration, persistence, or pace when he is not using alcohol.  Id. at 26.  She explained her finding was consistent with the alcohol treatment notes, wherein the social worker recommended Schwanz get a job, and consistent with the evidence that when Schwanz was sober, he was working as a consultant, sailing, biking and using the computer.  Id. at 26, 509.  The ALJ's reliance on the medical evidence, and Schwanz's ADLs was not improper.

24 - OPINION AND ORDER

Finally, the "B criteria" would not be satisfied even if the ALJ had accepted Dr. McDevitt's "moderate" ratings (assuming Schwanz stopped the substance abuse) because the remaining limitations would not constitute at least two "marked" limitations, or one "marked" limitation and "repeated" episodes of decompensation.  Id. at 21.  Dr. Collingwood, a DDS reviewing psychologist, found no evidence of "C criteria," which Dr. McDevitt's testimony supported.  Therefore, Schwanz's impairments did not meet a listing at step three, and the ALJ did not err by continuing the five-step analysis.

The ALJ's RFC assessment was consistent with Dr. McDevitt's testimony.  He opined that during the period of sobriety when Schwanz was in a rehabilitation program, June 2002 through March 2003, the record indicates Schwanz "functioned reasonably well."  Id. at 771.  Dr. McDevitt noted Schwanz's "subjective feeling that he can't do anything is not borne out by the record.  He probably could at least do simple repetitive activity."  Id. at 769.  Dr. McDevitt's opinion is consistent with the ALJ's RFC assessment that if Schwanz stopped abusing alcohol, he could perform work limited to simple, repetitive tasks.

As for Schwanz's ability to interact socially with others, Dr. McDevitt stated that without alcohol, Schwanz is "still not functioning well."  Id. at 771.  Dr. McDevitt explained that Schwanz has not really formed any permanent relationships and pretty much "does his own thing."  Id.  The ALJ then asked Dr. McDevitt if Schwanz, without using alcohol, would be able to engage in work involving minimal social interaction, like a janitor job.  Id.  He responded, "If [Schwanz's] clean and sober he might be able to do it," but "there's a history of argumentativeness" that may or may not be caused by the alcohol abuse.  Id.  The ALJ's RFC

assessment, limiting Schwanz's work to tasks involving minimal social interaction, is not inconsistent with Dr. McDevitt's opinion.

The ALJ noted that her RFC assessment "is supported by medical opinions and evidence that, while [Schwanz] has some limitations without use of alcohol, he has more limitations with the use of it. This is consistent with the testimony of Dr. McDevitt." Id. at 27. She cited evidence in the record from Schwanz's limited periods of sobriety to support her RFC assessment. Id. at 23-27. In June 2001, Schwanz entered an alcohol treatment program, and progress notes in July 2001 show he reported that he was doing well, his job was good, and he was "out and about." Id. at 23, 450. The next month, Schwanz reported breaking out of his two-year slump with alcohol, and was glad his work was going well. Id. at 23, 446. In October 2001, he reported his business was successful and he was saving the money he previously spent on purchasing beer. Id. at 23, 440. In February 2002, Schwanz reported applying for "regular, stable jobs" and having work, despite having bouts of depression. Id. at 23, 437-38.

After starting to drink alcohol again, Schwanz began another treatment program in the summer of 2002. Progress notes show that when sober, his strengths include strong work skills, a lack of fear to try things, a sense of humor, and a scientific logical mind. Id. at 23, 559. As a part of his recovery plan, Schwanz engaged in complex recreational activities such as sailing and diving. Id. at 23, 542-45, 548.

In August 2002, Schwanz stated that his thought process was changing, he was getting some skills back, and commented that he had a lot of money. Id. at 23, 524, 531. Schwanz also reported he was not so depressed, and he had a new client and some old business, presumably for his computer consulting work. Id. at 23-24, 521. Dr. Willet conducted a psychiatric evaluation

26 - OPINION AND ORDER

of Schwanz, and diagnosed him with depressive disorder, and assigned a GAF score of 50. Id. at 24, 518-19. Dr. Willet noted that Schwanz had not been tried on an antidepressant because he had difficulty maintaining sobriety. Id. Later that month, Schwanz reported feeling good, getting new business clients, and going camping with his father. Id. at 24, 515.

In the fall of 2002, Schwanz noted he was doing well in almost every area, applying for a new job, and getting more clients, despite struggling with depression. Id. at 24, 469-470, 473, 484, 492, 505. In February 2003, his treatment program discharge summary notes Schwanz was building his business and made $700.00 per month. Id. at 465-67.

The ALJ additionally pointed to the medical evidence supporting her RFC assessment. Id. at 24-25. In October 2002, Dr. Vinocur examined Schwanz, who reported ninety days of sobriety. Id. at 423-24. Dr. Vinocur stated that he appeared to be doing well on Prozac, which Schwanz reported made a significant difference for him, improving his mood, anxiety and obsessive thinking. Id. In February 2003, clinical psychologist, Carol Greenough, Ph.D., completed a learning disability evaluation for vocational rehabilitation. Id. at 457-64. She determined Schwanz had excellent intelligence and adept and complex thinking skills, and recommended work settings where he would have a good deal of autonomy. Id. at 461.

The ALJ also relied on the Psychiatric Review Technique Form and Mental RFC Assessment by DDS psychologist, Cynthia Collingwood, Ph.D. Id. at 624-41. Dr. Collingwood rated Schwanz's "B criteria" as mild, moderate, moderate, and none. She found him "markedly limited" in his ability to interact appropriately with the general public, and otherwise "moderately"or "not significantly limited" in his understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Collingwood concluded

Schwanz could perform "simple and complex tasks for a normal work day/week if he remains abstinent." Id. At 640.

In summary, Schwanz has failed to establish that his disabling limitations would remain if he stopped the substance abuse. Schwanz has not offered reliable evidence of his alleged symptoms during periods of sobriety, inconsistent with his RFC. Thus, he has failed to satisfy his burden of proof. Parra, 481 F.3d at 748; Ball, 254 F.3d at 821. The ALJ properly considered and relied on Dr. McDevitt's testimony, and substantial evidence in the medical record when fashioning her RFC assessment. Accordingly, the ALJ's determination that substance abuse is a contributing factor material to the determination of disability is a rational interpretation of the evidence and will not be disturbed. Andrews, 53 F.3d at 1039.

## CONCLUSION

The Commissioner's decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. Under these circumstances, the court must affirm the Commissioner. 42 U.S.C. § 405(g); Batson, 359 F.3d at 1193; Andrews, 53 F.3d at 1039-40. The Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of September, 2011.

 /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge

28 - OPINION AND ORDER